UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                                                Chapter 11

KOLLEL MATEH EFRAIM, LLC,                                Case No. 04-16410(CB)

                                    Debtor
----------------------------------------------------------x
KOLLEL MATEH EFRAIM, LLC, a/k/a
MATEH EPHRAIM LLC

                                    Plaintiff,              Adv. Pro. No. 04-

          -against-                                        **COMPLAINT**

HELEN-MAY HOLDINGS, LLC, and
IRENE GRIFFIN,

                                    Defendants.
----------------------------------------------------------x


          Kollel Mateh Efraim, LLC, a/k/a Mateh Ephraim LLC, the debtor and debtor-in-

possession herein (the "Plaintiff"), by its counsel Backenroth Frankel & Krinsky, LLP, for its

complaint herein, alleges, upon information and belief, as follows:


                          **JURISDICTION AND VENUE**

          1.    This Court has subject matter jurisdiction over this adversary  proceeding

pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

          2.    This is a "core" proceeding within the meaning of §157(b)(2).

          3.    This Court is the proper venue pursuant to 28 U.S.C. §1409(a).

          4.    The Plaintiff is a domestic limited liability company organized under the laws

of New York, with its principal place of business located at 751 Second Avenue, New York, New

York, 10017.

5. Defendant Helen-May Holdings, LLC ("HMH") is a domestic limited liability company organized under the laws of New York, with its principal place of business located at 27 Maple Avenue, Jeffersonville, New York 12748.

6. Defendant Irene Griffin ("Griffin") is a natural person residing at 27 Maple Avenue, Jeffersonville, New York 12748.

## BACKGROUND

7. On or about April 29, 2004, HMH entered into a contract of sale ("Contract") with Aron Fixler for the sale of certain real property located at 1141 Country Road 114, in Fosterdale, New York, for the purchase price of $1,400,000, with $140,000 payable upon the signing of the Contract and the remaining balance due at the closing. Mr. Fixler assigned his purchase rights under the Contract to the Plaintiff.

8. Pursuant to the terms of the Contract, HMH expressly "covenant[ed]" to "sell" the "parcel of land more particularly described in Schedule A attached" to the Contract (Contract §1.01[a]).

9. Schedule A is defined on the signature page of the Contract as a description of premises, and specifically includes and incorporates by reference the tax map designation (the "Tax Map") as part of the description of the premises. Thus, the Contract expressly defines Schedule A as follows:

"Schedule A

DESCRIPTION OF PREMISES

2

(to be attached separately **and to include tax map designation**)(emphasis added)".

10.    As relevant here, the Tax Map lists the premises as containing 77 acres of land.

11.    Consequently, under the terms of the Contract, HMH expressly "covenant[ed]" and represented to "sell" the premises as described by the Tax Map, which includes 77 acres of land. The Contract was signed by Griffin on behalf of HMH.

12.    Aside from HMH's express representation in the Contract that the premises contained 77 acres of land, HMH and/or Griffin made numerous other similar representations concerning the quantity of acreage of the premises.

13.    For example, Griffin provided the Plaintiff with an environmental report for the premises, dated February 27, 2004 (the "February 27, 2004 Environmental Report") and prepared by HMH's "environmental consultants and engineers".

14.    HMH's February 27, 2004 Environmental Report included at least twelve (12) separate additional representations that the premises contained 77 acres of land.

15.    Moreover, HMH and/or Griffin disseminated numerous marketing materials which likewise represented that the premises contained 77 acres of land.

16.    HMH's tax assessments for the property further indicated that it contained 77 acres of land.

17.   Aside from HMH's express written representations that the premises contained 77 acres of land, HMH and/or Griffin made similar oral representations concerning the quantity of acreage of the premises.

18.   In that regard, HMH and/or Griffin represented and/or warranted to the Debtor and/or its principal, Mr. Jack Lefkowitz and/or their agents that the premises contained 77 acres of land.

19.   The Plaintiff justifiably and reasonably relied upon HMH and/or Griffin's express contractual, written and/or oral representations that the property contained 77 acres of land in entering into the Contract.

20.   Moreover, by letter agreement, dated June 3, 2004, HMH and the Plaintiff entered into an occupancy agreement, whereby Plaintiff was granted the exclusive right to occupy, operate, maintain and utilize the premises up through to the closing date on the Contract, which was extended up to September 27, 2004.

21.   In yet further reliance upon HMH and/or Griffin's express contractual, written and/or oral representations concerning the quantity of the property's acreage, the Plaintiff invested significant additional funds and time and energy into the property to improve and enhance its value.

22.   For instance, the Plaintiff took possession of the property prior to closing and expended an additional $600,000 to make various improvements and renovations to the premises, including new kitchen and communication equipment and heating, ventilation and air conditioning units for each room.

23.   Moreover, the Plaintiff purchased two (2) adjacent properties to the premises for an additional $600,000 in order to develop and enhance the value the property.

24.    Consequently, the Plaintiff spent at least an additional $1,200,000 to improve and enhance the value of the premises.

25.    By letter, dated September 22, 2004, HMH further extended the Plaintiff's time to close on the Contract up to November 29, 2004.

26.    Unbeknownst to the Plaintiff, however, HMH's representations that the premises contained 77 acres of land were false and fraudulent, since the property contained only 60 acres of land.

27.    Unfortunately, the Plaintiff did not discover HMH's misrepresentations as to the true quantity of acreage of the premises until on or about September 27, 2004, when the Plaintiff received a survey of the property from its own surveyors which revealed that the premises contained only 60 acres of land.

28.    HMH and/or Griffin knew at all relevant times herein, including prior to the Contract, that their representations that the premises contained 77 acres of land were false and fraudulent, since their own property description indicated that the premises contained only 60 acres of land.

29.    Moreover, HMH and/or Griffin further knew that their representations concerning the quantity of acreage of the premises were false and fraudulent, since they refused to provide their own survey of the premises to the Plaintiff which, upon information and belief, confirmed that the premises contained only 60 acres of land.

30.    By way of background, during a meeting with Griffin, Mr. Lefkowitz spotted what appeared to be a survey of the premises and asked Griffin if he could see it. Griffin confirmed

that it was a survey of the premises, but indicated that she would have to first speak to her lawyer to determine whether she could provide the survey to Mr. Lefkowitz.

31.    Thereafter, the lawyer for Griffin and/or HMH indicated that they would not provide the survey to the Plainitff and that the Plaintiff must obtain its own survey.

32.    In retrospect, HMH and/or Griffin refused to provide a copy of their survey to Mr. Lefkowitz, since, upon information and belief, it confirmed that the premises contained only 60 acres of land and not the 77 acres which they had represented.

33.    Moreover, HMH and/or Griffin's misrepresentations concerning the quantity of the property's acreage were clearly material, since the actual quantity of the premises' acreage, i.e., 60 acres, is approximately 20% less than the quantity of the premises' acreage which HMH and/or Griffin represented, i.e.,  77 acres.

34.    Had the Plaintiff known that HMH and/or Griffin's representations concerning the quantity of the acreage of the property were false, it would not have entered into the Contract and pay the $140,000 Contract deposit, much less expend an additional $1,200,000 in funds improving and enhancing the value the property.

35.    As a result of HMH and/or Griffin's fraudulent  conduct, the Plaintiff was forced to file a Chapter 11 Bankruptcy petition to preserve its rights under the Contract and/or to the property.

36.    HMH's improper conduct, however, has continued on even during the Plaintiff's Bankruptcy.

37.    For example, the Plaintiff had already reserved the property for the two (2) consecutive weekends of October 9th-10th, and 16th-17th, to a group known as Friedman Catering.

38.   The group was going to pay the Plaintiff $40,000.00 per weekend for use of the property, or the aggregate sum of $80,000.00.

39.   Nevertheless, HMH improperly interfered with the Plaintiff's business and contractual relations and/or use of the premises by, among other things, advising both the property's manager and caretaker to cancel the reservations with Friedman Catering and/or to deny any access to the property to either the Plaintiff, Mr. Lefkowitz, and/or any group seeking access to the property through the Plaintiff.

40.   Moreover, HMH has further interfered with the Plaintiff's use of the property by locking up the kitchen on the premises.

41.   By virtue of HMH's improper self-help remedies, the Plaintiff has been wrongfully ousted from the premises and deprived of $80,000 in lost revenue from the scuttled Friedman Group reservations, as well as potential future income going forward.

42.   Additionally, HMH continues to interfere with the Plaintiff's business and contractual relations and/or use of the premises, as it is currently utilizing people to market and sell the property.

## FIRST CLAIM FOR RELIEF
### AGAINST HMH

43.   Plaintiff repeats the prior allegations contained herein.

44.   By virtue of defendants' fraudulent conduct, the Contract should be reformed to reflect the fact that the property does not contains 77 acres of land but only 60 acres of land, and there should be a corresponding reduction in the purchase price of the Contract to reflect the reduction in acreage of the property.

## SECOND CLAIM FOR RELIEF

**AGAINST HMH**

45.   Plaintiff repeats the prior allegations contained herein.

46.   By virtue of defendants' fraudulent conduct, Plaintiff should be awarded an

offset and/or reduction of the purchase price of the Contract based on its damages.

**THIRD CLAIM FOR RELIEF
AGAINST DEFENDANTS**

47.   Plaintiff repeats the prior allegations contained herein.

48.   By virtue of defendants' fraudulent conduct, the Contract should alternatively

be rescinded and Plaintiff should be awarded damages in an undetermined amount, but believed to

be in excess of $1,340,000, which includes, among other things, the return of the $140,000 Contract

deposit, and the additional $1,200,000 spent by the Plaintiff to improve and enhance the value of

the property.

**FOURTH CLAIM FOR RELIEF
AGAINST HMH**

49.   Plaintiff repeats the prior allegations contained herein.

50.   If defendant HMH is not adjudged liable for fraud, at the very least there was

a mutual mistake by the parties as to the actual acreage of the property.

51.   By virtue of the foregoing, the Contract should be reformed to reflect the fact

that the property does not contains 77 acres of land but only 60 acres of land, and there should be

a corresponding reduction in the purchase price of the Contract to reflect the reduction in acreage

of the property.

**FIFTH CLAIM FOR RELIEF**

**AGAINST HMH**

52.    Plaintiff repeats the prior allegations contained herein.

53.    By virtue of HMH's conduct, it breached the terms of the Contract.

54.    Consequently, Plaintiff has been damaged in an undetermined amount, but believed to be in excess of $1,340,000, which includes, among other things, the return of the $140,000 Contract deposit, and the additional $1,200,000 spent by the Plaintiff to improve and enhance the value of the property.

**SIXTH CLAIM FOR RELIEF**
**AGAINST HMH**

55.    Plaintiff repeats the prior allegations contained herein.

56.    By virtue of HMH's conduct, it has been unjustly enriched in an undetermined amount, but believed to be in excess of $1,340,000, which includes, among other things, the return of the $140,000 Contract deposit, and the additional $1,200,000 spent by the Plaintiff to improve and enhance the value of the property.

**SEVENTH CLAIM FOR RELIEF**
**AGAINST HMH**

57.    Plaintiff repeats the prior allegations contained herein.

58.    HMH has argued that the premises are not property of the Plaintiff's estate.

59.    By virtue of the foregoing, Plaintiff is alternatively entitled to judgment against defendant HMH, declaring Plaintiff as the equitable owner of the premises and impressing a constructive trust upon the premises and compelling the transfer of the premises to the Plaintiff's estate.

**EIGHTH CLAIM FOR RELIEF**

**AGAINST HMH**

60.    Plaintiff repeats the prior allegations contained herein.

61.    The premises and/or any revenue generated therefrom, constitute property of the Plaintiff's estate under 11 U.S.C. §541.

62.    Nevertheless, HMH has improperly interfered with, diverted and/or thwarted the Plaintiff's access to the premises and/or revenue generated therefrom.

63.     By virtue of the foregoing, plaintiff is entitled to judgment against HMH, pursuant to 11 U.S.C. §§ 541 and 542, directing the turnover of the premises and/or any revenue generated therefrom.

**NINTH CLAIM FOR RELIEF**
**AGAINST DEFENDANTS**

64.    Plaintiff repeats the prior allegations contained herein.

65.    The premises and/or any revenue generated therefrom, constitute property of the Plaintiff's estate under 11 U.S.C. §541.

66.    Nevertheless, subsequent to Plaintiff's bankruptcy filing, defendants have improperly acted to obtain possession of and/or to exercise control over the premises and/or any revenue generated therefrom.

67.    By virtue of the foregoing, defendants have violated the automatic stay imposed by 11 U.S.C. §362.

68.    By virtue of the foregoing, Plaintiff has been  damaged in an undetermined amount, but believed to be in excess of $240,000, which includes, among other things, the current and future lost revenue from running the premises.

**TENTH CLAIM FOR RELIEF**

**AGAINST HMH**

69.   Plaintiff repeats the prior allegations contained herein.

70.   By virtue of HMH's conduct, it wrongfully interfered with and/or disturbed the Plaintiff's peaceable use, and/or quiet enjoyment, occupancy and/or possession of the premises.

71.   By virtue of HMH's conduct, it wrongfully ousted the Plaintiff from and/or denied the Plaintiff access to the  premises.

72.   By virtue of HMH's conduct, it wrongfully evicted the Plaintiff from the premises.

73.   By virtue of the foregoing, Plaintiff has been  damaged in an undetermined amount, but believed to be in excess of $240,000, which includes, among other things, the current and future lost revenue from the premises.

**ELEVENTH CLAIM FOR RELIEF**
**AGAINST HMH**

74.   Plaintiff repeats the prior allegations contained herein.

75.   By virtue of HMH's conduct, it constructively evicted the Plaintiff from the premises.

76.   By virtue of the foregoing, Plaintiff has been  damaged in an undetermined amount, but believed to be in excess of $240,000, which includes, among other things, the current and future lost revenue from the premises.

**TWELFTH CLAIM FOR RELIEF**
**AGAINST DEFENDANTS**

77.   Plaintiff repeats the prior allegations contained herein.

78.   Subsequent to Plaintiff's bankruptcy filing, defendants have improperly properly interfered with and denied and/or ousted the Plaintiff from access to the premises and/or revenue generated therefrom, and have instead used and continued to use the premises for their own personal and business interests to the detriment of the Plaintiff.

79.   Defendants' actions were undertaken in violation of the automatic stay imposed by 11 U.S.C. 362 and without the Plaintiff's authorization.

80.   Defendants' diversion of the Plaintiff's assets for their own personal use, is interfering with the proper administration of the Plaintiff's estate.

81.   By virtue of defendants' actions, the Plaintiff has been irreparably harmed.

82.   Plaintiff has no adequate remedy at law.

83.   By virtue of the foregoing, defendants and/or any of its agents should be enjoined from interfering with and preventing Plaintiff's access to and/or occupancy, operation and/or utilization of the premises.


WHEREFORE, Plaintiff demands judgment:

a)      on the first claim for relief against defendant HMH, reforming the Contract on the grounds of fraud to reflect the fact that the property does not contains 77 acres of land but only 60 acres of land, and reducing the purchase price of the Contract to reflect the reduction in acreage of the property;

b)      on the second claim for relief against defendant HMH, awarding an offset and/or reduction of the purchase price of the Contract based on Plaintiff's damages due to HMH's fraud;

c)      on the third claim for relief against defendants HMH and Griffin, alternatively rescinding the Contract and awarding Plaintiff damages based on defendants' fraud, in an undetermined amount, but believed to be in excess of $1,340,000,

which includes, among other things, the return of the $140,000 Contract deposit, and the additional $1,200,000 spent by the Plaintiff to improve and enhance the value of the property;

d)    on the fourth claim for relief against defendant HMH, reforming the Contract on the grounds of mutual mistake to reflect the fact that the property does not contains 77 acres of land but only 60 acres of land, and reducing the purchase price of the Contract to reflect the reduction in acreage of the property;

e)    on the fifth claim for relief against defendant HMH, awarding Plaintiff damages based on HMH's breach of contract in an undetermined amount, but believed to be in excess of $1,340,000, which includes, among other things, the return of the $140,000 Contract deposit, and the additional $1,200,000 spent by the Plaintiff to improve and enhance the value of the property;

f)    on the sixth claim for relief against defendant HMH, awarding Plaintiff damages based on HMH's unjust enrichment in an undetermined amount, but believed to be in excess of $1,340,000, which includes, among other things, the return of the $140,000 Contract deposit, and the additional $1,200,000 spent by the Plaintiff to improve and enhance the value of the property;

g)    on the seventh claim for relief against defendant HMH, declaring Plaintiff as the equitable owner of the premises and impressing a constructive trust upon the premises and compelling the transfer of the premises to the Plaintiff's estate;

h)    on the eighth claim for relief against defendant HMH, directing the turnover of the premises and/or any revenue generated therefrom;

i)    on the ninth claim for relief against defendants HMH and Griffin for damages based on their violation of the automatic stay, in an undetermined amount, but believed to be in excess of $240,000, which includes, among other things, the current and future lost revenue from running the premises;

j)    on the tenth claim for relief against defendant HMH for damages based on its wrongful eviction of the Plaintiff from the premises, in an undetermined amount, but believed to be in excess of $240,000, which includes, among other things, the current and future lost revenue from running the premises;

k)    on the eleventh claim for relief against defendant HMH for damages based on its constructive eviction of the Plaintiff from the premises, in an undetermined amount, but believed to be in excess of $240,000, which includes, among other things, the current and future lost revenue from running the premises;

    l)        on the twelfth claim for relief against defendants HMH and/or Griffin, enjoining them and/or their agents from interfering with and preventing Plaintiff's access to and/or occupancy, operation and/or utilization of the premises;

and for such other further and different relief as is just and proper.

Dated:       New York, New York
              November 15, 2004

                                BACKENROTH FRANKEL & KRINSKY, LLP
                                Attorneys for the Debtor/Plaintiff

                              By:    s/Abraham Backenroth
                                      A Member of the Firm (AB-1989)
                                      489 Fifth Avenue
                                      New York, New York 10017
                                    (212) 593-1100